**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------x
                               :
GLENN BECKWORTH, individually  :
and derivatively on behalf of  :
Discount Trophy & Co., Inc.,   :
WILLIS BECKWORTH, individually :
and derivatively on behalf of  :
Discount Trophy & Co., Inc.,   :
VICKY JUNEAU, individually     :
and derivatively on behalf of  :
Discount Trophy & Co., Inc.,   :
GLENN BECKWORTH, individually  :
and derivatively on behalf of  :
Marco Plastic Industries, Inc.,:
                               :
        Plaintiffs,            :
                               :
    v.                         :  Civ. No. 3:13CV1593 (AWT)
                               :
MARCEL O. BIZIER and           :
BARBARA KING BIZIER,           :
                               :
        Defendants,            :
                               :
    and                        :
                               :
DISCOUNT TROPHY & CO., INC. and:
MARCO PLASTIC INDUSTRIES, INC.,:
                               :
        Nominal Defendants.    :
                               :
-------------------------------x
```

**RULING ON MOTION TO AMEND**

Plaintiffs Glenn Beckworth, Willis Beckworth, and Vicky Juneau, individually and derivatively on behalf of Discount Trophy & Co., Inc. ("DTC"), and Glenn Beckworth, individually and derivatively on behalf of Marco Plastic Industries, Inc. ("MPI"), have moved for leave to file an amended complaint

pursuant to Fed. R. Civ. P. l5(a)(2).  For the reasons set forth below, the plaintiffs' motion is being granted in part and denied in part.  The plaintiffs are being allowed to amend their complaint only with respect to their request to inspect and copy books and records.

I.   **BACKGROUND**

The plaintiffs allege the following circumstances.  From 1988 to 2008, Glenn Beckworth managed and operated Plastic Plus Awards ("Plastic Plus"), a company "engaged in the wholesale trophy/awards component business with [its] primary customers being retail trophy/awards stores throughout the continental United States." (First Amended Complaint (Doc. No. 45-3) ("Proposed Complaint") ¶ 22.) Plastic Plus was a Louisiana general partnership composed of Glenn Beckworth, Willis Beckworth and Vicky Juneau.

In or about 1998, Glenn Beckworth became acquainted with Marcel Bizier, the sole shareholder, president and Chief Executive Officer of Discount Trophy & Co., Inc., a Connecticut corporation in the same line of business as Plastic Plus.  Prior to November 20, 2008 the four children of Marcel Bizier and his wife Barbara King Bizier were the sole shareholders of Marco Plastic Industries, Inc. ("MPI"), a Connecticut corporation that "acts as a conduit in ordering trophy/awards parts and

components from Chinese vendors and reselling them to [DTC] at a 5% markup." (Proposed Complaint ¶ 24).

For 12 to 18 months prior to November 20, 2008, Marcel Bizier and Glenn Beckworth had discussed merging Plastic Plus and Discount Trophy & Co., Inc. "with a view to Glenn and Marcel jointly operating the [combined businesses] for three years . . . ." (Proposed Complaint ¶ 26.) After the three year period, Glenn Beckworth would "purchas[e] the shares of Marcel [Bizier] and assum[e] management and control of the combined businesses and Marcel [Bizier would] retir[e]." (Proposed Complaint ¶ 26.)

By agreement dated November 20, 2008, DTC and Plastic Plus agreed to merge and operate under the name Discount Trophy & Co., Inc.  Under a Shareholder Agreement having the same date, Marcel Bizier owns 75% of DTC, Glenn Beckworth, Willis Beckworth and Vicky Juneau collectively own 25% of DTC, and Glenn Beckworth owns 20% of MPI.  The Shareholder Agreement provided that Marcel Bizier would be the President and Chief Executive Officer of DTC, Glenn Beckworth would be the Vice-President and Chief Operating Officer, and DTC's Board of Directors would be composed of Marcel Bizier, Glenn Beckworth and Barbara King Bizier.  In connection with the merger, an employment agreement was executed between DTC and Marcel Bizier.

The plaintiffs allege that Marcel Bizier and Barbara King Bizier engaged in certain conduct after the merger that was in

-3-

violation of the various merger-related agreements and was detrimental to DTC, MPI, their shareholders, and the plaintiffs. Specifically, the plaintiffs allege that Marcel Bizier unilaterally increased his salary in violation of the Shareholder Agreement and Marcel Bizier's employment agreement; Marcel Bizier withheld access to the books and accounting records of DTC and MPI; DTC acquired the issued and outstanding shares of Barhill Manufacturing, Inc. ("Barhill"), a Pennsylvania corporation owned by Barbara King Bizier; and Marcel Bizier caused MPI to distribute a sum of $2,076,828.00 to his children instead of distributing a pro-rated amount to all shareholders.

The Complaint (Doc. No. 1) contained derivative claims and individual claims, and one of the individual claims was a request for an order to inspect and copy the books and records of DTC.[1]

---

[1] The Complaint asserted claims against defendants Marcel Bizier and Barbara King Bizier for Breach of Contract (First, Second, Third, Fourth and Eighth Causes of Action); Director Conflict of Interest in violation of Conn. Gen. Stat. § 33-781(1)(4) and §§ 33-783(a) and (c) (Fifth Cause of Action); Unlawful Distribution in violation of Conn. Gen. Stat. §§ 33-687(a) and (b) (Sixth Cause of Action); Breach of Fiduciary Duty (Seventh and Fifteenth Causes of Action); Refusal of Access to Books in violation of Conn. Gen. Stat. § 33-946(a) and §§ 33-948(a) and (c) (Ninth Cause of Action); Promissory Estoppel (Tenth Cause of Action); Right to Compel Involuntary Dissolution pursuant to Conn. Gen. Stat. § 33-896 et seq. (Eleventh Cause of Action); Fraud (Twelfth Cause of Action); Civil Conspiracy (Thirteenth Cause of Action); Unfair and Deceptive Trade Practices in violation of Conn. Gen. Stat. § 42-110b (Fourteenth Cause of Action); and Unjust Enrichment (Sixteenth Cause of Action). The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Fourteenth and Sixteenth Causes of Action were derivative claims.

The court granted the defendants' motion to dismiss all claims in the Complaint.  The court dismissed the derivative claims without prejudice for lack of standing because the plaintiffs failed to satisfy the fair and adequate representative requirements of Conn. Gen. Stat. §§ 33-721 and 52-572j and Fed. R. Civ. P. 23.1(a).  The Ninth Cause of Action was dismissed without prejudice and with permission to file a motion for leave to amend the complaint.

The Proposed Complaint omits all individual claims except for a request to inspect and copy the books and records of DTC and MPI (Sixth Cause of Action).  It also includes five derivative claims: breach of contract for excess compensation (First Cause of Action); breach of contract for unauthorized acquisition (Second Cause of Action); director conflict of interest in violation of Conn. Gen. Stat. § 33-781(1)(4) and §§ 33-783(a) and (c) (Third Cause of Action); unlawful distribution in violation of Conn. Gen. Stat. §§ 33-687(a) and (b) as to MPI (Fourth Cause of Action); and breach of fiduciary duty (Fifth Cause of Action).

## II.  LEGAL STANDARD

Fed R. Civ. P. 15(a)(2) provides that, absent circumstances set forth in subsection (a)(1):

> a party may amend its pleading only with the opposing
> party's written consent or the court's leave.   The

court should freely give leave when justice so requires.

The Supreme Court has emphasized that amendment should normally be permitted:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal citations omitted). "[I]t is rare that [leave to amend] should be denied, especially when there has been no prior amendment." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (internal citations omitted.

"Where the amended portion of the complaint would fail to state a cause of action, however, the district court may deny the party's request to amend." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). "A party opposing a motion for leave to amend has

the burden of proving that such amendment is futile . . . ."
Schaghticoke Tribal Nation v. Norton, No. 3:06CV81 PCD, 2007 WL
867987, at *11 (D. Conn. Mar. 19, 2007).

**III. DISCUSSION**

    **A.    Individual Claim**

    The defendants contend that the proposed amendment to the
plaintiffs' individual claim for inspection and copies of the
books and records of DTC and MPI (the Sixth Cause of Action) is
futile because the plaintiffs fail to state a claim upon which
relief can be granted.

    In Connecticut, two subsections of Conn. Gen. Stat. § 33-
948 authorize a court to order the inspection of corporate
documents.  Section 33-948(a) authorizes the inspection of
corporate records that a shareholder has requested pursuant to
Section 33-946(a):

> If a corporation does not allow a shareholder who
> complies with subsection (a) of section 33-946 to
> inspect and copy any records required by that
> subsection to be available for inspection, the
> superior court for the judicial district where the
> corporation's principal office or, if none in this
> state, its registered office is located may summarily
> order inspection and copying of the records demanded
> at the corporation's expense upon application of the
> shareholder.

Conn. Gen. Stat. § 33-948(a) (emphasis added).  Section 33-
946(a) provides a shareholder with the right to inspect the
records enumerated in Section 33-945(e):

> A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, <u>any of the records of the corporation described in subsection (e) of section 33-945</u> if he gives the corporation a signed written notice of his demand at least five business days before the date on which he wishes to inspect and copy.

Conn. Gen. Stat. § 33-946(a) (emphasis added).  Section 33-945(e) describes the following corporate records:

> (1) Its certificate of incorporation or restated certificate of incorporation, all amendments to them currently in effect and any notices to shareholders referred to in subsection (l) of section 33-608 regarding facts on which a document is dependent; (2) its bylaws or restated bylaws and all amendments to them currently in effect; (3) resolutions adopted by its board of directors creating one or more classes or series of shares and fixing their relative rights, preferences and limitations, if shares issued pursuant to those resolutions are outstanding; (4) the minutes of all shareholders' meetings and records of all action taken by shareholders without a meeting for the past three years; (5) all written communications to shareholders generally within the past three years, including the financial statements furnished for the past three years under section 33-951; (6) a list of the names and business addresses of its current directors and officers; and (7) its most recent annual report delivered to the Secretary of the State under section 33-953.

Conn. Gen. Stat. § 33-945(e).

A court may order the inspection of "any other record" pursuant to Conn. Gen. Stat. § 33-948(b).  Section 33-948(b) permits a court to order inspection of corporate records that a shareholder has requested pursuant to Section 33-946(c) and Section 33-946(d):

-8-

> If a corporation does not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with subsections (c) and (d) of section 33-946 may apply to the superior court for the judicial district where the corporation's principal office or, if none in this state, its registered office is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection on an expedited basis.

Conn. Gen. Stat. § 33-948(b) (emphasis added).  Section 33-946(c) provides that:

> A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (d) of this section and gives the corporation a signed written notice of his demand at least five business days before the date on which he wishes to inspect and copy: (1) Excerpts from minutes of any meeting of the board of directors or a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders and records of action taken by the shareholders, the board of directors or a committee of the board without a meeting, to the extent not subject to inspection under subsection (a) of this section; (2) accounting records of the corporation; and (3) the record of shareholders.

Conn. Gen. Stat. § 33-946(c) (emphasis added).  Section 33-946(d) places the following conditions on a shareholder's request pursuant to Section 33-946(c):

> A shareholder may inspect and copy the records described in subsection (c) of this section only if: (1) His demand is made in good faith and for a proper purpose; (2) he describes with reasonable particularity his purpose and the records he desires to inspect; and (3) the records are directly connected with his purpose.

Conn. Gen. Stat. § 33-946(d).

In the Complaint, the plaintiffs sought an order to inspect and copy the books and records of DTC, pursuant to Sections 33-948(a) and (c), and Section 33-946(a).[2]  (See Complaint ¶¶ 123-128.)  The Complaint did not cite Section 33-948(b) or Section 33-946(c).  The court dismissed this claim without prejudice because the documents the plaintiffs had demanded to inspect and copy were not within the scope of Section 33-945(e).  (See Ruling on Motion to Dismiss (Doc. No. 41) at 42-45.)

In the Proposed Complaint, the plaintiffs bring the Sixth Cause of Action pursuant to Conn. Gen. Stat. §§ 33-948, 33-946(a) and 33-946(c), alleging that the "[p]laintiffs . . . requested access to the records of [DTC], of which they are all shareholders, and [plaintiff] Glenn [Beckworth] . . . requested access to the records of MPI, of which he is a shareholder." (Proposed Complaint ¶ 62 at 14.)  Thus, whereas the Complaint sought an order to inspect only the documents enumerated in Section 33-945(e), the Proposed Complaint seeks an order to inspect both the documents enumerated in Section 33-945(e) and the documents enumerated in Section 33-946(c).

---

[2] Section 33-948(c) requires the corporation to pay the expenses that the shareholder incurred to obtain the order to inspect the books in certain circumstances.

The defendants argue that the proposed amendment is futile because the plaintiffs' requests to inspect the corporate documents were overly broad.  The court does not agree.  The court determined in the Ruling on Motion to Dismiss that certain of the plaintiffs' requests were overly broad because the requests sought documents not provided for by Section 33-945(e), sought documents outside the time period provided for in Section 33-945(e), or sought documents from Barhill, an entity in which the plaintiffs do not allege that they hold any shares.  Here, the plaintiffs propose to amend their pleading to include both Section 33-946(a) and 33-946(c), which gives the plaintiffs the authority to demand many of the documents sought in their July 1, 2013 letter demand, such as tax returns, financial statements, and minutes of meetings of directors and shareholders.

The defendants argue that the proposed amendment is also futile because the Proposed Complaint includes only a conclusory allegation that the plaintiffs complied with Section 946(d). However, the letter, which is attached to the Proposed Complaint as Exhibit C, states that the purpose of the demand is to determine the value of the plaintiffs' shares.  (See Proposed Complaint, Exhibit C at 1 ("This will certify that, pursuant to CGS 33-946(c), this demand is made in good faith, for a proper purpose of our clients determining the value of their shares,

and that the requested records are directly connected with this purpose.").)

The plaintiffs have alleged facts sufficient to state a claim for inspection and copying of the books and records of DTC and MPI, and the defendants have not met their burden of showing that it would be futile to grant the plaintiffs leave to amend the Sixth Cause of Action.  Therefore, the motion for leave to amend is being granted as to this claim.

**B.   Derivative Claims**

**1.   Fair and Adequate Representative Requirement**

The defendants contend that the proposed amendment is futile as to the plaintiffs' derivative claims because the plaintiffs fail to satisfy Connecticut's fair and adequate representative requirement.  The plaintiffs contend that, having omitted all of their individual claims from the Proposed Complaint except their claim for inspection and copying of the books and records of DTC and MPI, they can fairly and adequately represent DTC and MPI.

To have standing to bring a derivative action, a plaintiff must meet the requirements of Connecticut General Statutes sections 33-721 and 52-572j.  Section 52-572j requires a shareholder plaintiff to fairly and adequately represent the interests of similarly situated shareholders, and Section 33-721 requires a shareholder plaintiff to fairly and adequately

represent the interests of the corporation.[3]  See Conn. Gen.
Stat. § 52-572j ("[A] derivative action may not be maintained if
it appears that the plaintiff does not fairly and adequately
represent the interests of the shareholders . . . similarly
situated in enforcing the right of the corporation . . . ."); 
Conn. Gen. Stat. § 33-721 ("A shareholder may not commence or
maintain a derivative proceeding unless the shareholder . . .
(2) fairly and adequately represents the interests of the
corporation in enforcing the right of the corporation.").[4]

The eight-part test adopted by the Connecticut Supreme
Court in Fink v. Golenbock, 238 Conn. 183 (1996) guides the
court in determining whether the plaintiffs are fair and
adequate representatives.  The factors to be considered are:

> (1) whether the named plaintiff is the real party in
> interest; (2) the plaintiff's familiarity with the
> litigation and willingness to learn about the suit;
> (3) the degree of control exercised by attorneys over
> the litigation; (4) the degree of support given to the
> plaintiff by the other shareholders; (5) the
> plaintiff's personal commitment to the action; (6) the

---

[3] Rule 23.1(a) of the Federal Rules of Civil Procedure states that "the
derivative action may not be maintained if it appears that the plaintiff does
not fairly and adequately represent the interests of shareholders or members
who are similarly situated in enforcing the right of the corporation or
association." Fed. R. Civ. P. 23.1(a).  However, "as a rule of procedure
issued pursuant to the Rules Enabling Act, Rule 23.1 cannot be understood to
'abridge, enlarge or modify any substantive right.'" Kamen v. Kemper Fin.
Servs., Inc., 500 U.S. 90, 96 (1991) (quoting 28 U.S.C. § 2072(b).

[4] Section 52-572j predates Section 33-721, which was enacted as part of the
Connecticut Business Corporation Act (the "CBCA") and became effective on
January 1, 1997.  Connecticut appellate courts continue to recognize both
Section 52-572j and Section 33-721.  See N. Star Contracting Corp. v.
Albright, 156 Conn. App. 311, 317 (2015) (citing both Section 52-572j and
Section 33-721).

remedies sought by the plaintiff; (7) the relative magnitude of the plaintiff's personal interests as compared to the plaintiff's interest in the derivative action itself; and (8) the plaintiff's vindictiveness toward the other shareholders.

Id. at 205.  The eight factors are "nonexclusive and interrelated, and . . . it is frequently a combination of factors that guides a court in determining whether a plaintiff meets the requirements of fair and adequate representation." Id. at 205-06.  "Whether a plaintiff is an appropriate representative is fact-specific and depends on any number of factors."  Id. at 205.  "The key is whether the nominal plaintiff's . . . interests and issues [are] coextensive with those of the class of shareholders he seeks to represent, and whether he is able to assure the trial court that as a representative, he will put up a real fight."  Id. at 206 (internal quotation marks omitted) (citing Barrett v. Southern Connecticut Gas Co., 172 Conn. 362, 373 (1977)).

In the Ruling on Motion to Dismiss, the court applied the Fink test and held that the plaintiffs were not fair and adequate representatives in this case because of the weight of the sixth and seventh Fink factors:

> The plaintiffs argue that this case is like Fink v. Golenbock because DTC and MPI are close corporations in which "DTC and MPI have interests that need to be represented and the plaintiffs are the only representatives in a position to protect those interests." (Mem. Opp. Mot. to Dismiss [(Doc. No. 28)] at 13). Although this point weighs in the plaintiffs'

favor, the facts of this case are materially different from Fink v. Golenbock because the plaintiffs seek the involuntary dissolution of the corporations they claim to represent and thus are actively pursuing claims that put their interests in conflict with those of the corporations.

In the Eleventh Cause of Action the plaintiffs seek as a remedy the involuntary dissolution of DTC and MPI. . . . . [T]he court concludes that the sixth factor, i.e. the remedies sought by the plaintiff, weighs heavily against finding that a shareholder who brings a claim for dissolution of a corporation is a fair and adequate representative of a corporation and its shareholders.

The seventh factor also weighs against such a finding here. Several of the plaintiffs' claims put their personal interests in direct conflict with those of DTC. In the Second and Eighth Causes of Action, for unlawful reduction in Glenn Beckworth's salary, he seeks back pay for DTC's breach of the G. Beckworth Employment Agreement. . . . Although the plaintiffs bring both of these claims against the defendants, not DTC (one as a derivative claim on behalf of DTC and one as an individual claim on behalf of Glenn Beckworth), Glenn Beckworth's individual interest in recovering for the breach of the G. Beckworth Employment Agreement outweighs the interest the plaintiffs have as shareholders of DTC in recovering from the defendants. . . .

Similarly, the plaintiffs allege in the Third Cause of Action that the defendants caused DTC damages in relocation expenses and higher rents by cancelling the Commercial Leases, and argue in their Memorandum in Opposition to Defendants' Motion to Dismiss that "[DTC] will be liable [to the plaintiffs] for the breach of the [Commercial Leases]." (Mem. Opp. Mot. to Dismiss at 38). Again, the plaintiffs' individual interests in recovering for the breach of the Commercial Leases [are] greater than, and in direct conflict with, the interests the plaintiffs have as shareholders of DTC in recovering from the defendants.

Applying the eight-part test established in Fink v. Golenbock, the court finds that the plaintiffs are not

-15-

fair and adequate representatives of DTC and MPI.
Although the plaintiffs' experience litigating this
matter, representation by counsel and personal
commitment to the action, as well as the lack of other
similarly situated shareholders weigh in favor of a
finding that the plaintiffs are appropriate
representatives of DTC and MPI, these factors are
outweighed by the remedies sought by the plaintiffs
and the magnitude of the plaintiffs' personal
interests as compared to the plaintiffs' interest in
the derivative action itself. Therefore, the
plaintiffs have not met their burden of proving by a
preponderance of the evidence that they have standing
to pursue the derivative claims. Accordingly, this
court lacks jurisdiction and the First, Second, Third,
Fourth, Fifth, Sixth, Seventh, Fourteenth and
Sixteenth Causes of Action are being dismissed without
prejudice.

(Ruling on Motion to Dismiss at 11-14.)[5]

In support of the motion for leave to amend, the plaintiffs

argue that they would be fair and adequate representatives of

DTC, MPI, and similarly situated shareholders:

The Plaintiffs have addressed the deficiencies
identified by the Court in the [P]roposed [Complaint]
by omitting all of their claims, including the Second,
Third, Eighth, and Eleventh Causes of Action, that may
have put their personal interests in direct conflict
with those of DTC. . . . As a result, all of the Fink
factors now weigh in favor of finding that the
Plaintiffs are fair and adequate representatives of
DTC and MPI, and of all similarly situated
shareholders of DTC and MPI, in pursuing their
derivative claims against the Defendants, such that
they have standing to bring, and the Court has
jurisdiction to hear, those derivative claims.

---

[5] Certain factual allegations referenced in the Ruling on Motion to Dismiss
were not included in the Proposed Complaint because they relate to claims
where the interests of the plaintiffs were adverse to those of DTC and MPI.

(Memorandum in Support of Plaintiffs' Motion for Leave to File Amended Complaint (Doc. No. 45-1) ("Plaintiffs' Memorandum") at 6.)  The defendants contend, however, that "[h]aving demonstrated – in this action – [the plaintiffs'] outside entanglements and antagonism as to DTC and MPI, they cannot now serve as fair and adequate representatives."  (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Amended Complaint (Doc. No. 46) ("Defendants' Opposition") at 12.)

To determine if the plaintiffs are fair and adequate representatives of DTC, MPI, and similarly situated shareholders, the court applies the Fink test to the Proposed Complaint and considers the record in this case.

As the court found in the Ruling on Motion to Dismiss, many of the Fink factors weigh in the plaintiffs' favor, including the plaintiffs' experience litigating this matter, representation by counsel, and personal commitment to the action, and the lack of other similarly situated shareholders.

As to the seventh factor (that is, the relative magnitude of the plaintiffs' personal interests as compared to the plaintiffs' interest in the derivative action itself), the defendants point out that the plaintiffs previously asserted claims that were in direct conflict with those of the corporations they seek to represent, including a claim for

-17-

breach of the employment contract between Glenn Beckworth and
DTC, a claim for breach of the commercial leases between the
plaintiffs and DTC, and a claim for voluntary dissolution of DTC
and MPI.  The last of these, in particular, was an anathema to
the interests of the corporations.  In support of their
contention that the plaintiffs therefore are not fair and
adequate representatives in this case, the defendants cite N.
Star Contracting Corp. v. Albright, 156 Conn. App. 311 (2015)
and Barrett v. Southern Connecticut Gas Co., 172 Conn. 362, 373
(1977).  In N. Star Contracting Corp., the Appellate Court of
Connecticut upheld a ruling that a nominal plaintiff was not a
fair and adequate representative where the plaintiff
simultaneously maintained a direct action against the
corporation through another entity it controlled.  N. Star
Contracting Corp. is inapposite.  Unlike the plaintiff in that
case, the plaintiffs here have abandoned all claims that are in
direct conflict with those of the corporations they seek to
represent.  The claims that remain would further the
corporations' interests or, in the case of the request to
inspect and copy books and records, are not hostile to the
corporations' interests.

     In Barrett, the Connecticut Supreme Court determined that
the nominal plaintiff could not fairly and adequately represent
the other shareholders of a corporation because he had brought

an individual action against the corporation prior to bringing
the derivative action on its behalf.  However, the Connecticut
Supreme Court has since recognized that Barrett does not bar
plaintiffs who have possible claims against a corporation from
representing that corporation in a derivative action.  See Fink,
238 Conn. at 205 ("Barrett, however, does not hold that a
plaintiff with possible individual claims against the
corporation can never fairly and adequately represent other
shareholders in a derivative action. Whether a plaintiff is an
appropriate representative is fact-specific and depends upon any
number of factors.").

Although the history of this litigation weighs somewhat
against a finding that the plaintiffs' interest in the
derivative action itself is greater than the plaintiffs'
personal interests, no party other than the plaintiffs is likely
to pursue the derivative claims against the defendants.  Other
than the plaintiffs, the only shareholders of the corporations
are the defendants and their children, who are alleged to have
benefitted from the unlawful distribution described in the
Fourth Cause of Action.  Thus, notwithstanding the history of
this litigation, the court concludes that the magnitude of the
plaintiffs' interest in the derivative claims as pled in the
Proposed Complaint is not outweighed by their personal
interests, and the seventh factor is a neutral factor.

As to the sixth factor, most of the remedies sought by the plaintiffs in the Proposed Complaint would inure to the benefit of DTC and MPI, and the plaintiffs are no longer seeking remedies that are hostile to the interests of the corporations, such as the involuntary dissolution of DTC and MPI or an order directing DTC to pay Glenn Beckworth back salary.  However, the plaintiffs also seek "an accounting . . . in order to determine the damages of the Plaintiffs", which raises the concern that the defendants could seek to use this litigation as a method to put themselves in a position to pursue their individual interests against the corporations.  (Proposed Complaint ¶ 2 at 16.)  Therefore, this factor weighs only slightly in favor of the plaintiffs.

Weighing the factors in the Fink test, the court finds that, on balance, the plaintiffs would be fair and adequate representatives of DTC, MPI, and their shareholders in bringing the derivative claims in the Proposed Complaint; the facts before the court at this time show that the plaintiffs would "put up a real fight" on behalf of the corporations and similarly situated shareholders in this litigation.  Barrett, 172 Conn. at 373.  Thus, the defendants have not met their burden of showing that it would be futile to grant the plaintiffs leave to amend their complaint because the plaintiffs

could not satisfy the fair and adequate representation
requirement.

> ### 2.  Connecticut's Written Demand Requirement

The defendants contend that the proposed amendment is
futile as to the derivative claims because the plaintiffs failed
to comply with Connecticut's written demand requirement for
derivative actions.  The plaintiffs do not contend that they
made an adequate demand on the corporations.  Instead, they
argue that Connecticut recognizes a futility exception to its
written demand requirement, and demand would have been futile
under the circumstances here.

Conn. Gen. Stat. § 33-722 requires that a shareholder make
a written demand on the corporation before commencing a
derivative action:

> No shareholder may commence a derivative proceeding
> until: (1) A written demand has been made upon the
> corporation to take suitable action; and (2) ninety
> days have expired from the date the demand was made
> unless the shareholder has earlier been notified that
> the demand has been rejected by the corporation or
> unless irreparable injury to the corporation would
> result by waiting for the expiration of the ninety-day
> period.

Conn. Gen. Stat. § 33-722.  Section 33-722 is part of the
Connecticut Business Corporation Act (Conn. Gen. Stat. §§ 33-600
through 33-998), which is "a comprehensive revision of
[Connecticut's] corporations statutes designed to bring those
statutes into conformity with the Model Business Corporation

-21-

Act". <u>Thomason v. Chem. Bank</u>, 234 Conn. 281, 292 (1995).  The
Connecticut Business Corporation Act became effective January 1,
1997.

"Several Connecticut Superior Court cases decided after the
enactment of [Conn. Gen. Stat] § 33-722 have continued to
recognize the futility exception [to the written demand
requirement]." <u>First Equity Grp., Inc. v. Culver</u>, No. 3:08-CV-
01893VLB, 2009 WL 353490, at *4 (D. Conn. Feb. 11, 2009) (citing
<u>Guarino v. Livery Ltd., Inc.</u>, No. X04CV030127824, 2003 WL
22853729 (Conn. Super. Ct. Nov. 18, 2003), <u>Miller v. Allaire</u>,
No. X05CV054007126S, 2006 WL 1610640 (Conn. Super. Ct. May 24,
2006), and <u>Musto v. OptiCare Eye Health Centers, Inc.</u>, No. CV
990359863S, 1999 WL 439348 (Conn. Super. Ct. June 15, 1999))
(declining to rule on the continued viability of the futility
exception or its applicability to the case because the court
found that adequate demand had been made). <u>See also</u> <u>Trustees of</u>
<u>Police & Fire Ret. Sys. of City of Detroit v. Clapp</u>, No. 08 CIV.
1515 KMKGAY, 2010 WL 1253214, at *1 (S.D.N.Y. Mar. 29, 2010)
("Several Connecticut Superior Court cases decided after the
enactment of C.G.S. § 33-722 have continued to recognize the
futility exception. . . . [D]iscovery is not barred for failure
to make demand under the circumstances herein."); <u>In re Clark</u>,
No. 08-20571 ASD, 2009 WL 3366973, at *3 (Bankr. D. Conn. Oct.
16, 2009) (denying motion to dismiss because whether the

-22-

plaintiff, who failed to make a written demand, is properly pursuing the action as a shareholder derivative action "presents a fact-sensitive question best resolved at trial since whether the demand requirements of Conn. Gen. Stat. § 33-722 would have been futile depends upon the Court's assessment of the particular circumstances.").

Connecticut's appellate courts have not addressed whether written demand is excused where demand would be futile.

The Second Circuit has twice considered Connecticut's written demand requirement.  In Joy v. North, 692 F.2d 880 (2d Cir. 1982), a case that predates Section 33-722, the court recognized that, under Connecticut common law, demand is excused when it would be futile.  Id. at 887-88 ("When there is a conflict of interest in the directors' decision not to sue because the directors themselves have profited from the transaction underlying the litigation or are named defendants, no demand need be made and shareholders can proceed directly with a derivative suit.").  However, because Joy predates the enactment of the Connecticut Business Corporation Act, it is of limited value in interpreting this statute.

More recently, the Second Circuit had occasion to consider Section 33-722, but declined to address whether there is an exception for demand futility.  See MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 163 n.5 (2d Cir. 2011) ("[A] disenchanted

shareholder must make a demand on the corporation to take suitable action. . . . Because this case involves a situation where demands were made on the board, we do not address demand futility.") (internal quotations and citations omitted).

The defendants argue that Connecticut law does not provide a futility exception to the written demand requirement in Section 33-722.  After considering Section 33-722 and the relevant Connecticut Superior Court cases, the court agrees.

Connecticut law requires that a statute be interpreted according to its plain meaning:

> The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.

Conn Gen. Stat. § 1-2z.  "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation . . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter."  Comm'r of Pub. Safety v. Freedom of Info.

-24-

Comm'n, 301 Conn. 323, 338 (2011) (quoting Dep't of Pub. Safety
v. Freedom of Info. Comm'n, 298 Conn. 703 (2010)).

Here, the meaning of Section 33-722, read in context of the
Connecticut Business Corporation Act, is plain and unambiguous:
a shareholder must make a written demand upon the corporation to
take suitable action before commencing a derivative proceeding.
There is no statutory support for the proposition that demand is
excused where it would be futile, either in Section 33-722 or
any other section of the Connecticut General Statutes.  The
statute's silence as to a futility exception to the written
demand requirement is insufficient, standing alone, to render
the statute susceptible to more than one reasonable
interpretation.  See Trevek Enterprises, Inc. v. Victory
Contracting Corp., 107 Conn. App. 574, 583 (2008) (declining to
"engraft an exemption on the text of" Section 33-921).

Thus, it appears that Connecticut has adopted a universal
demand rule.  Such a rule does not lead to results that are
"absurd" or "unreasonable."  Rather, the Official Comment to the
section of the Model Business Corporation Act upon which Section
33-722 was modeled (Section 7.42) shows that such a rule is part
of a well-developed and sensible statutory scheme:

> Section 7.42 requires a written demand on the
> corporation in all cases.  The demand must be made at
> least 90 days before commencement of suit unless
> irreparable injury to the corporation would result.
> This approach has been adopted for two reasons.

> First, even though no director may be independent, the
> demand will give the board of directors the
> opportunity to reexamine the act complained of in the
> light of a potential lawsuit and take corrective
> action. Secondly, the provision eliminates the time
> and expense of the litigants and the court involved in
> litigating the question whether demand is required.

Model Business Corporation Act § 33-722 Official Comment (Am.
Bar Ass'n 1993). The U.S. Supreme Court has recognized that the
Model Business Corporation Act "abolishes the futility exception
to demand." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 105
(1991).

The court finds unpersuasive the cases in which Connecticut
Superior Courts have, after the enactment of Section 33-722,
recognized a futility exception to the written demand
requirement. These decisions recognize the exception in dicta,
rely on cases that predate Section 33-722, or cite to cases that
do one or both of the foregoing. See Musto v. OptiCare Eye
Health Centers, Inc., No. CV 990359863S, 1999 WL 439348 at *2
(Conn. Super. Ct. June 15, 1999) (recognizing the futility
exception in dicta, although "the parties at oral argument and
in their respective memoranda [did] not brief[] the futility
issue."); Guarino v. Livery Ltd., Inc., No. X04CV030127824, 2003
WL 22853729 (Conn. Super. Ct. Nov. 18, 2003) (citing cases from
Connecticut that predate Section 33-722, and cases from other
jurisdictions); Beers v. Star Gas, LLC, No. X08CV044002494S,
2008 WL 853422, at *3 (Conn. Super. Ct. Mar. 11, 2008)

(recognizing the futility exception in dicta and citing <u>Musto</u>);
<u>Taccogna v. Turner</u>, No. LLICV125007399S, 2013 WL 1010633, at *4
(Conn. Super. Ct. Feb. 14, 2013) (citing <u>Beers</u> and cases that
predate the enactment of Section 33-722 in recognizing a
futility exception as to limited liability companies); <u>Ward v.
Gamble</u>, No. HHDCV116018954S, 2013 WL 4872711, at *6 (Conn.
Super. Ct. Aug. 19, 2013) (recognizing a futility exception as
to limited liability companies, while citing cases that predate
Section 33-722, and also citing <u>First Equity Grp., Inc. v.
Culver</u>, No. 3:08-CV-01893VLB, 2009 WL 353490, at *4 (D. Conn.
Feb. 11, 2009), in which the court expressly declined to rule on
the continued viability of the futility exception for
corporations); <u>Rocco v. Furrer</u>, No. MMXCV136009192, 2013 WL
5879523 at *8 (Conn. Super. Ct. Oct. 17, 2013) (citing <u>First
Equity Grp., Inc.</u> and cases that predate Section 33-722 in
recognizing a futility exception as to limited liability
companies); <u>Budney v. Budney Indus., Inc.</u>, No. CV136023734, 2014
WL 2021998, at *2 (Conn. Super. Ct. Apr. 11, 2014) (citing
<u>Rocco</u>, <u>First Equity Group, Inc.</u>, and cases that predate the
enactment of Section 33-722); <u>Moore v. Bender</u>, No.
FSTCV136020376S, 2014 WL 4099345, at *8 (Conn. Super. Ct. July
14, 2014) (citing cases that predate the enactment of Section
33-722).[6]

---

[6] Some of these cases discuss demand futility with respect to derivative

Connecticut Superior Court Cases have cited the maxim that "the law does not require the doing of a useless thing" when recognizing a futility exception to the demand requirement. Guarino v. Livery Ltd., Inc., No. X04CV030127824, 2003 WL 22853729 *2 (Conn. Super. Ct. Nov. 18, 2003) (quoting Corsino v. Grover, 148 Conn. 299, 308 (1961)).  But the Official Comment to Section 7.42 of the Model Business Corporation Act makes it clear that even a demand that would be "futile" serves a purpose in a statutory scheme like that found in the Connecticut Business Corporation Act in that it gives the board of directors the opportunity to reexamine the act complained of in light of a potential lawsuit and take corrective action and it also

---

claims against limited liability companies, but cases involving limited liability companies do not assist with the analysis here.  In some instances the fact that limited liability companies have members, limited liability company membership interests and managers, not shareholders, shares and directors, is obscured.  See Conn. Gen. Stat. §§ 34-101(12), (13) and (15).  Also, "it is important to note that Connecticut's statute on derivative actions, § 52-572j, is silent with respect to the applicability of derivative actions to [limited liability companies]" and "the Connecticut Limited Liability Company Act [Conn. Gen. Stat. §§ 34-100 et seq.] is also silent on the applicability of derivative actions to [limited liability companies]." Ward v. Gamble, No. CV085017829S, 2009 WL 2781541, at *3 (Conn. Super. Ct. July 23, 2009).  Rather, in the absence of statutory authority, the court in Ward concluded that members of limited liability companies may sue derivatively as a matter of common law.  See Ward, 2009 WL 2781541 at *4 ("This court agrees with the New York Court of Appeals that the absence of a statute authorizing derivative actions with respect to LLCs does not mean that such actions cannot be recognized as a matter of common law.").  This conclusion is consistent with the history of derivative actions referred to in Ma'Ayergi & Associates, LLC v. Pro Search, Inc., 115 Conn. App. 662, 668 (2009) ("In equity, there were two actions that evolved into a single derivative action. . . ."). Because the derivative action is available to members of limited liability companies under Connecticut law as a matter of common law, the common law exception for demand futility applies in such actions.  In contrast, at issue here is a statutory right to bring a derivative action.

eliminates the time and expense involved in litigating whether demand is required.

The meaning of Section 33-722 is plain and unambiguous and does not yield absurd or unworkable results, so the court need not consider extratextual evidence to interpret the statute.[7]

As to the case law of other jurisdictions that have codified the Model Business Corporation Act, in Halebian v. Berv, 590 F.3d 195 (2d Cir. 2009), the court recognized that a Massachusetts statute modeled on Section 7.42 provides for no exception to the demand requirement where demand would be futile:

> First, [Massachusetts] adopt[ed] a "universal demand requirement," requiring that a shareholder make a written demand upon the corporation and then wait a specified period of time before filing any derivative action on behalf of the corporation. Section 7.42 prohibits, without exception, the filing of any derivative action absent such written demand. Section 7.42 therefore abrogates prior common law exceptions to the demand requirement.

---

[7] In any event, such evidence further supports the conclusion that written demand must be made in all cases.  One of Connecticut's motivations in basing the Connecticut Business Corporation Act on the Model Business Corporation Act was to provide the state with the benefit of the official commentary to the Model Act and the case law of other jurisdictions interpreting the Model Act.  See Sojitz Am. Capital Corp. v. Kaufman, 141 Conn. App. 486, 492-93 (2013) ("[T]he legislative history indicates that [Connecticut's] case law on corporate law is sparse, suggesting that courts, attorneys and corporations would benefit from the guidance provided by the model act's official comments as well as the case law of jurisdictions that have similarly codified the model act."). See also Ernest M. Lorimer & James I. Lotstein, Connecticut Business Corporation Act Sourcebook 327, Comments of James Lotstein, Co-Chairman of the Model Act Business Task Force of the Connecticut Bar Association, at the Connecticut General Assembly Joint Standing Committee Hearings (1997).

Halebian, 590 F.3d at 206-07 (abrogated on other grounds by Espinoza ex rel. JPMorgan Chase & Co. v. Dimon, No. 14-1754, 2015 WL 4747068, at *4 (2d Cir. Aug. 12, 2015)).

"[B]ecause there is no binding authority from the Connecticut courts, [this court] must do [its] best to predict what the Connecticut Supreme Court would hold", looking at the plain and unambiguous language of the statute.  Izzarelli v. R.J. Reynolds Tobacco Co., 767 F. Supp. 2d 324, 327 (D. Conn. 2010). See also Joy, 692 F.2d at 885 (2d Cir. 1982).  Here, in light of the plain meaning of Section 33-722, the court concludes that there is no futility exception to the written demand requirement in that statute.

Accordingly, the motion to amend the derivative claims is being denied for futility, because if the court were to grant the plaintiffs' motion to amend the derivative claims, these claims would then be dismissed for lack of standing.[8]

## IV.  CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Leave to File Amended Complaint (Doc. No. 45) is hereby GRANTED in part and DENIED in part.  The motion is denied as to the First, Second, Third, Fourth and Fifth Causes of Action in the

---

[8] In light of the foregoing analysis, the court does not address the defendants' argument that, as to the derivative claims, the plaintiffs failed to make a timely motion to alter the judgment pursuant to Fed. R. Civ. P. 59(e).

Proposed Complaint.  The motion is granted as to the Sixth Cause of Action in the Proposed Complaint, which will be the sole remaining claim.

It is so ordered.

Dated this 29th day of September 2015, at Hartford, Connecticut.

_____
/s/
Alvin W. Thompson
United States District Judge
